UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KARL SHEEHAN,

     Plaintiff,

v.                                Case No:  2:16-cv-353-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause come before the Court on Plaintiff Karl Sheehan's Complaint (Doc. 1) filed

on May 11, 2016.  Plaintiff seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA") denying his claim for a period of disability and

disability insurance benefits.  The Commissioner filed the Transcript of the proceedings

(hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed

legal memoranda in support of their positions.  For the reasons set out herein, the decision of the

Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. §

405(g).

## I.      Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review

### A.      Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505.  The

impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On April 21, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits asserting an onset date of April 6, 2010. (Tr. at 192). Plaintiff's application was denied initially on August 11, 2010, (Tr. at 220), and upon reconsideration on October 28, 2010, (Tr. at 221). After a hearing, Administrative Law Judge ("ALJ") M. Dwight Evans issued an unfavorable decision on February 17, 2012. (Tr. at 222-36). The Appeals Council, however, vacated the ALJ's decision and remanded the case to the ALJ for further review. (Tr. at 237-41). On remand, ALJ Evans conducted another hearing on May 14, 2014. (Tr. at 29-78). On November 17, 2014, ALJ Evans issued another unfavorable decision. (Tr. at 8-28). The ALJ found Plaintiff not to be under a disability from April 6, 2010, through the date of the decision. (Tr. at 22).

On March 31, 2016, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6). Plaintiff filed a Complaint (Doc. 1) in this Court on May 11, 2016. Defendant filed an Answer (Doc. 15) on August 10, 2016. The parties filed Memoranda in support. (Docs. 22, 24). The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 19). This case is ripe for review.

### C.      Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014.  (Tr. at 14).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 6, 2010, the alleged onset date.  (Tr. at 14).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  "hypertension, hearing loss, partial left eye blindness, chronic headaches, umbilical hernia, and partial left face paralysis."  (Tr. at 14).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (Tr. at 15).

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) except:

> [Plaintiff] is able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull to the extent of his ability for lifting/carrying. The claimant can occasionally climb ramps/stairs, ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally be exposed to extreme cold and extreme heat. The claimant has no limitation on exposure to water, wetness, humidity, or atmospheric conditions. The claimant could occasionally work in high, exposed places. The claimant is able to hear and understand oral instructions and communicate information. The claimant is also able to use the telephone to communicate. The claimant is able to avoid ordinary hazards such as boxes on the floor, ajar doors, approaching people or vehicles. He is able to read very small print as well as ordinary newspaper or book print. He is able to view a computer screen. He is able to determine differences in shape and color of small objects such as screws, nuts, and bolts. Occasionally is defined as up to 1/3 of the time in an 8-hour workday.

(Tr. at 15-16).

At step four, the ALJ determined that Plaintiff is able to perform his past relevant work. (Tr. at 20). The ALJ determined that Plaintiff's past relevant work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. at 20). Specifically, the ALJ noted the vocational expert's ("VE") testimony that Plaintiff has past relevant work that includes:

1) *Stock Clerk* – (Dictionary of Occupational Titles, #299.367-010) classified as heavy with an SVP of 4 (semi-skilled);

2) *Retail Manager* – (Dictionary of Occupational Titles, #185.167-046) classified as light with an SVP of 7 (skilled) however the claimant described performing this job at the heavy level; and

3) *Merchandiser* – (Dictionary of Occupational Titles, #219.367-018) classified as light with an SVP of 3 (semi-skilled) however the claimant described performing this job at the medium to heavy level.

(Tr. at 20).[2] The VE testified that Plaintiff would be able to perform his past relevant work as a retail manager and merchandiser as described in the *Dictionary of Occupational Titles* but not as he described as performing the jobs. (Tr. at 20). Comparing Plaintiff's RFC with the physical and mental demands of his past relevant work, the ALJ found that Plaintiff is able to perform his past relevant work as it is generally performed. (Tr. at 20). The ALJ found that Plaintiff's ability to perform light work allows him to perform work at an equal or lesser exertional level and that Plaintiff does not have a mental impairment or other nonexertional limitations that preclude him from performing semi-skilled or skilled work. (Tr. at 20).

Pursuant to Social Security Ruling ("SSR") 00-4p, the ALJ found that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 20).

Although the ALJ determined that Plaintiff was capable of performing his past relevant work at step four of the sequential evaluation, the ALJ proceeded to make alternative findings at step five. (Tr. at 20-21). At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 21). Specifically, the VE testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations such as:

1) *Ticket Taker* (Dictionary of Occupational Titles, #344.667-010) classified as light, unskilled work (SVP 2) with 60,000 in the nation and 2,000 in the State of Florida;

2) *Electronics Worker* (Dictionary of Occupational Titles, #726.687-010) classified as light, unskilled work (SVP 2) with 70,000 in the nation and 2,000 in the State of Florida; and

---

[2] "SVP" stands for Specific Vocational Preparation code.

3) *Small Product Assembly* (Dictionary of Occupational Titles, #739.687-030) classified as light, unskilled work (SVP 2) with 120,000+ in the nation and 2,200 in the State of Florida.

(Tr. at 21).

The ALJ found the VE's testimony to be acceptable and consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 21). Based on the VE's testimony and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. at 21). The ALJ determined, therefore, that a finding of "not disabled" was appropriate. (Tr. at 21).

The ALJ ultimately concluded that Plaintiff was not under a disability from April 6, 2010, through the date of the decision. (Tr. at 22).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises four issues on appeal, which can be summarized as follows:

(1) Whether the ALJ properly assessed the Plaintiff's RFC;

(2) Whether the ALJ properly weighed Plaintiff's credibility;

(3) Whether the ALJ properly considered Plaintiff's past relevant work; and

(4) Whether the ALJ properly considered the availability of other jobs in the national economy that Plaintiff could perform.

(Doc. 22 at 1-2). The Court addresses these issues below.

### A. The ALJ's RFC Determination

Plaintiff contends that the ALJ erred in determining his RFC. (Doc. 22 at 12). Plaintiff's specific contentions may be summarized as follows: (1) the ALJ erred by not including limitations in the RFC related to Plaintiff's severe impairments in vision, hearing, chronic headaches, and facial paralysis; (2) the ALJ erred by not finding Plaintiff's alleged degenerative knee arthritis to be a severe impairment and also by not including any limitations in the RFC related to his degenerative knee arthritis; and (3) the ALJ erred by failing to accord the opinions of Dr. Efren Baltazar, Dr. Daniel J. Johnson, and Dr. Rajan Sareen adequate weight and consideration. (*Id.*). The Court addresses each discrete sub-issue in turn.

i.      *Plaintiff's Severe Impairments in Vision, Hearing, Chronic Headaches, and Facial Paralysis*

Plaintiff contends that the ALJ erred in determining his RFC by failing to include any non-exertional limitations related to his severe impairments in vision, hearing, chronic headaches, and facial paralysis. (*Id.*). Plaintiff argues that because the ALJ found these impairments to be severe, the ALJ necessarily determined that each impairment significantly limited Plaintiff's ability to do basic work activities. (*Id.* at 13 (citing 20 § 404.1520(c))). Plaintiff contends that it is inconsistent for the ALJ to find these impairments to be severe but then fail to include any limitations in the RFC analysis. (*See id.*).

Additionally, Plaintiff contends that the ALJ failed to comply with the Appeals Council's remand order, which directed the ALJ to give further consideration to Plaintiff's maximum RFC. (*Id.* (citing Tr. at 239)). Plaintiff contends that instead of listing Plaintiff's "limitations," the ALJ only stated Plaintiff's "capabilities." (*Id.*). Plaintiff contends that the ALJ's failure to include the additional limitations posed by his counsel at the hearing was not harmless error because the VE testified that someone with those additional limitations would be precluded from doing Plaintiff's past relevant work. (*Id.* at 13-14 (citing Tr. at 75-76)).

Defendant disagrees, arguing that the ALJ did not err because substantial evidence supports the ALJ's RFC analysis and the maximum RFC he gave Plaintiff. (Doc. 24 at 6-7). In support, Defendant notes that "a diagnosis alone is insufficient to establish that the condition caused functional limitations." (Doc. 24 at 6 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)).

As an initial matter, an RFC is "the most" Plaintiff can do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). To determine a plaintiff's RFC, the ALJ must use all of the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. §

416.945(e).  On this issue, the Appeals Council's remand order directed the ALJ to consider Plaintiff's maximum RFC.  (Tr. at 239).  Upon review, it appears that the ALJ complied with the remand order.  Specifically, by making findings about Plaintiff's RFC in his decision, the ALJ necessarily stated his findings regarding "the most" Plaintiff can do despite his limitations.  *See* 20 C.F.R. § 404.1545(a)(1).  Moreover, Plaintiff has not cited any legal authority for the proposition that an ALJ errs by only including "capabilities" instead of specifically including "limitations."  As such, Plaintiff has not met his burden of showing that the ALJ erred in making the RFC determination or that his actions were inconsistent with the Appeals Council's remand order.

Additionally, the Court notes that Plaintiff argues that the ALJ failed to include any limitations related to his chronic headaches or facial paralysis.  Upon review, however, Plaintiff has not identified how the ALJ's alleged failure to include specific limitations for these two impairments impacts Plaintiff's ability to work.  Plaintiff's briefing only discusses the ALJ's alleged failure to include limitations related to Plaintiff's vision and hearing.  (*See* Doc. 22 at 14).  Plaintiff has not suggested what additional limitations he suffered based on these two impairments.  Moreover, as pointed out by Defendant, the mere existence of impairments does not reveal the extent to which they limit Plaintiff's ability to work or necessarily undermine the ALJ's determination in that regard.  *See Moore*, 405 F.3d at 1213 n.6.  Thus, Plaintiff has not met his burden of demonstrating that these impairments impact his ability to work, and the Court is unwilling to speculate as to what impact these two condition may have on Plaintiff's ability to work.  Accordingly, the Court finds that the ALJ did not err regarding Plaintiff's chronic headaches and facial paralysis.

Turning to Plaintiff's vision and hearing impairments, unlike Plaintiff's chronic headaches and facial paralysis, Plaintiff has affirmatively offered a suggestion of how the ALJ's alleged failure to add additional limitations constitutes harmful error. Specifically, Plaintiff contends that the ALJ should have included the additional limitations his counsel posed to the VE at the hearing. (*See* Doc. 22 at 14). Plaintiff argues that the VE testified that someone with the additional vision and hearing impairments his counsel suggested – in addition to being able to lift 10 pounds frequently – would be precluded from performing Plaintiff's past relevant work. (*Id.* (citing Tr. at 75-76)). The Court addresses Plaintiff's vision and hearing impairments separately below.

### 1. Plaintiff's vision impairments

Plaintiff contends that the ALJ should have included in his RFC determination the additional limitations his counsel posed to the VE at the hearing. (*See* Doc. 22 at 14). The additional limitations are that the hypothetical individual "would be blind in his left eye, so he would have no binocular vision and would have difficulty with depth perception. In fact, his vision he would not even be able to see the chart of an optometry exam through a pinhole." (Tr. at 76).

As stated above, an RFC is "the most" Plaintiff can do despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 416.945(e). When the Commissioner's decision is supported by substantial evidence, however, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards*, 937 F.2d at 584 n.3.

Upon review of the ALJ's decision, the Court finds that the ALJ's RFC determination as to Plaintiff's vision impairments is supported by substantial evidence of record.

As an initial matter, it appears that the ALJ addressed the potential limitations suggested by Plaintiff's counsel but chose not to include them in his RFC determination. For instance, while Plaintiff's counsel suggested that Plaintiff is blind in his left eye such that he would not even be able to see an optometry chart through a pinhole, the ALJ cited medical records showing that Plaintiff's vision in his left eye was not as severe as alleged. (Tr. at 18). Specifically, while the ALJ noted that Plaintiff "suffers from vision loss in his left eye caused by meningitis induced cornea and facial palsy," the ALJ nonetheless cited a consultative examination performed by Dr. Richard A. Conroy in October 2010. (Tr. at 18 (citing Tr. at 584-87)). That examination showed that Plaintiff can "count fingers with his left eye." (Tr. at 18 (citing Tr. at 585)). The Court finds this citation to the record provides substantial evidence in support of a finding that Plaintiff was not "blind in his left eye."

Additionally, in his RFC determination, the ALJ stated that Plaintiff "is able to avoid ordinary hazards such as boxes on the floor, ajar doors, approaching people or vehicles. He is able to read very small print as well as ordinary newspaper or book print. He is able to view a computer screen. He is able to determine differences in shape and color of small objects such as screws, nuts, and bolts." (Tr. at 15-16). These findings are supported by the record. Specifically, the ALJ noted that Plaintiff reported having a driver's license with mirror restrictions. (Tr. at 18 (citing Tr. at 60)). The ALJ also pointed to statements in the record by Plaintiff indicating that Plaintiff occasionally drives and that he can read his mail and does not require special assistance. (Tr. at 18 (citing Tr. at 338-39)). Further, the ALJ noted that Plaintiff was not wearing eyeglasses at the hearing. (Tr. at 17).

In sum, while Plaintiff certainly has vision impairments, the ALJ evaluated those claims and declined to add further limitations to Plaintiff's RFC. The ALJ's decision not to include the additional impairments suggested by Plaintiff's counsel at the hearing is supported by substantial evidence. *See Edwards*, 937 F.2d at 584 n.3. The Court, therefore, affirms the ALJ's decision on this ground.

### 2. Plaintiff's hearing impairments

As to Plaintiff's hearing impairments, Plaintiff contends that the ALJ should have included the additional limitations his counsel posed to the VE at the hearing that the hypothetical individual should "avoid exposure to loud noises." (*See* Doc. 22 at 14 (citing Tr. at 76)). In support, Plaintiff points to the opinion of Dr. Baltazar, who stated that Plaintiff should be limited in exposure to excessive noise. (*Id.* at 17 (citing Tr. at 592)).

Upon review of the ALJ's decision, however, the Court finds that the ALJ's decision not to include an additional limitation to "avoid exposure to loud noises" in the RFC determination is supported by substantial evidence of record.

Specifically, in his decision, the ALJ discussed Plaintiff's hearing impairments. (Tr. at 16). In making his determination, the ALJ cited a consultative examination by Dr. Richard H. Wingert. (Tr. 18 (citing Tr. at 579-83)). The ALJ noted that Dr. Wingert's records indicated that Plaintiff did not use a hearing aid. (Tr. at 18 (citing Tr. at 581)). The ALJ further noted Dr. Wingert's assessment of Plaintiff's hearing impairments, which showed that Plaintiff's hearing loss was moderate to moderately severe mixed loss in the left ear, and mild to moderately severe SNHL at 4K-8K in the right ear. (Tr. at 18 (citing Tr. at 581)). The ALJ also noted Dr. Wingert's observation that Plaintiff "had a tube placed in his left ear in October 2005, but failed to return for follow up care and did not seem concerned about the presence of the tube." (*Id.*).

The ALJ noted Dr. Wingert's opinion that Plaintiff's "lack of follow up care had led to chronically infected left ear tube with large conductive hearing loss" and that "a large portion of his hearing loss was reversible with medical therapy." (Tr. at 18 (citing Tr. at 582)). Dr. Wingert's opinion did not suggest that Plaintiff should avoid exposure to loud noises. (*See* Tr. at 579-83).

In addition, the ALJ noted Plaintiff's statements where he "reported that he does not have any concerns with driving due to his hearing problem" and that Plaintiff "is able to hear the television." (Tr. at 18). The ALJ also noted that Plaintiff never obtained hearing aids, despite having a prescription for them, and that Plaintiff had no difficulty hearing during telephone conversations. (Tr. at 18).

Based on this review of the evidence, the ALJ determined that Plaintiff "is able to hear and understand oral instructions and communicate information" and that Plaintiff can "use the telephone to communicate." (Tr. at 18). Upon an independent review, these findings are supported by the ALJ's citations to the record above.

Further, while Plaintiff points to the opinion of Dr. Baltazar in support of his contention that Plaintiff should be limited to excessive noise exposure, (Tr. at 592), as explained in greater detail below in Part II.A.iii.1. *infra*, the ALJ correctly gave the opinion of Dr. Baltazar less weight. Moreover, the ALJ clearly relied heavily on the opinion of Dr. Wingert, whose opinion does not suggest that Plaintiff should avoid exposure to loud noises. (*See* Tr. at 579-83). Moreover, Dr. Wingert opined that Plaintiff's condition is reversible with treatment. (*Id.* at 583).

In sum, the Court finds that the ALJ's decision is supported by substantial evidence of record. *See Edwards*, 937 F.2d at 584 n.3. Thus, the ALJ did not err in his decision not to

include an additional limitations in the RFC to "avoid exposure to loud noises." The Court, therefore, affirms on this issue.

### ii. Plaintiff's Alleged Degenerative Knee Arthritis

Plaintiff's next ground of alleged error is that the ALJ failed to include Plaintiff's degenerative knee arthritis as a severe impairment and that the ALJ failed to include any corresponding limitations in his RFC determination related to Plaintiff's degenerative knee arthritis. (Doc. 22 at 12).

Defendant disagrees, arguing that the ALJ's decision is supported by substantial evidence. (*See* Doc. 24 at 8-9).

Upon review, the Court notes that at step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison*, 814 F.2d at 588. While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

Nevertheless, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.

App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the ALJ made a determination that Plaintiff suffered from the following severe impairments: "hypertension, hearing loss, partial left eye blindness, chronic headaches, umbilical hernia, and partial left face paralysis." (Tr. at 14). Because the ALJ determined that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. The only requirement is that the ALJ considered all of Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. Specifically, in making his RFC determination, the ALJ stated:

> [T]he undersigned *has considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned *has also considered opinion evidence* in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. at 16) (emphasis added). Additionally, the Court notes that the ALJ specifically discussed Plaintiff's degenerative knee arthritis in discussing the medical opinion of Dr. Johnson. (Tr. at 18).

Based on these statements, the Court concludes that the ALJ considered all of Plaintiff's impairments, whether severe or not, when he considered the evidence of record. Thus, regardless of whether the ALJ erred in failing to conclude that Plaintiff's degenerative knee

arthritis is severe, the record nevertheless demonstrates that the ALJ considered this impairment in combination with all of Plaintiff's other impairments.

Furthermore, while Plaintiff contends that the ALJ failed to include limitations related to his degenerative knee arthritis, the Court finds this assertion to be unsupported by the record. Specifically, in his decision, the ALJ noted Dr. Johnson's opinion that Plaintiff "is limited in his ability to stand and walk because of the knee pain likely due to degenerative arthritis." (Tr. at 18 (citing Tr. at 577)). The ALJ's RFC determination expressly includes limitations relating to standing and walking. (Tr. at 15). Specifically, the ALJ stated that Plaintiff is limited to "stand[ing] and/or walk[ing] about 6 hours in an 8-hour workday." (Tr. at 15). Therefore, contrary to Plaintiff's assertion, it appears that the ALJ included limitations in the RFC related to degenerative knee arthritis.

In sum, the Court finds that the ALJ applied the correct legal standards and that the ALJ's opinion is supported by substantial evidence. *See Heatly*, 382 F. App'x at 825. Accordingly, the Court affirms the ALJ's decision on these grounds.

> iii.    The ALJ's review of the Medical Opinions of Dr. Baltazar, Dr. Johnson, and Dr. Sareen

The final ground related to the ALJ's RFC determination with which Plaintiff takes issue is the weight and consideration given to three physicians—Dr. Baltazar, Dr. Johnson, and Dr. Sareen. (Doc. 22 at 12).

In reviewing this issue, the Court notes that medical opinions are statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). When evaluating a medical opinion, the factors an ALJ must consider include:

(1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 3:08-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.*

Further, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). There is no requirement, however, to give deference to the opinion of a non-treating physician. *See Denomme*, 518 F. App'x at 877-78.

An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)). Moreover, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Court addresses the three medical opinions at issue in turn, beginning with Dr. Johnson's opinion.

### 1.    Dr. Johnson's opinion

Plaintiff argues that although the ALJ gave Dr. Johnson's opinion considerable weight, the ALJ failed to explain why he rejected Dr. Johnson's conclusions regarding Plaintiff's alleged limited ability to stand and walk. (Doc. 22 at 15).

Defendant argues that the ALJ's opinion did not fail to include limitations relating to walking or standing. (Doc. 24 at 8). Instead, Defendant notes that Dr. Johnson's opinion does not include any specific limitations on walking and standing in his opinion. (*Id.*). Additionally, Defendant contends that the ALJ's limitation to light work is consistent with Dr. Johnson's examination of Plaintiff, which showed Plaintiff walked normally, had full range of motion in all joints, and 5/5 motor strength throughout. (*Id.* at 8-9 (citing Tr. at 574-77)). Moreover, Defendant argues that – by limiting Plaintiff to walking and standing for approximately six hours and by reducing the amount of weight Plaintiff can lift – the ALJ's limitations appropriately reduce the amount of strain on Plaintiff's knee. (*Id.* at 9).

Upon review, the Court finds the ALJ's review of Dr. Johnson's opinion to be supported by substantial evidence. Specifically, the ALJ noted Dr. Johnson's opinion that Plaintiff "is limited in his ability to stand and walk because of the knee pain likely due to degenerative arthritis." (Tr. at 18 (citing Tr. at 577)). Contrary to Plaintiff's assertion, it does not appear that the ALJ rejected this statement. Instead, the ALJ's RFC determination specifically includes limitations relating to standing and walking. (Tr. at 15). The ALJ found that Plaintiff is limited to "stand[ing] and/or walk[ing] about 6 hours in an 8-hour workday." (*Id.*). Moreover, the Court notes that Dr. Johnson's opinion does not include specific limitations as to standing and walking.

(Tr. at 577). Because Dr. Johnson's opinion does not include any specific limitations on walking and standing in his opinion, the Court has no basis to conclude that the ALJ rejected Dr. Johnson's opinion. Instead, it appears that the ALJ affirmatively included limitations in his RFC determination based on Dr. Johnson's opinion as to Plaintiff's ability to walk and stand. Thus, the Court finds that the ALJ did not err and, therefore, affirms the ALJ's decision on this ground.

2.      Dr. Baltazar's opinion

Plaintiff contends that the ALJ's reasoning for giving Dr. Baltazar's opinion little weight is circular and conclusory. (Doc. 22 at 14-15).

Defendant disagrees, arguing that the ALJ provided good reasons for giving little weight to Dr. Baltazar's opinion. (Doc. 24 at 4). Defendant contends that Dr. Baltazar's conclusions only differ from Plaintiff's RFC with respect to some additional limitations related to Plaintiff's abilities to lift, hear, and see. (*Id.*). Defendant argues that these additional limitations are inconsistent with the objective medical evidence of record. (*Id.*). Further, Defendant argues that Dr. Baltazar is not a treating provider and, thus, his opinion is not entitled to controlling weight. (*Id.* at 5 (citing 20 C.F.R. § 404.1529(c); *Denomme*, 518 F. App'x at 878)).

Upon review, the Court notes that the ALJ gave Dr. Baltazar's opinion little weight because the ALJ found that Dr. Baltazar's opinion that Plaintiff is limited to only sedentary work "is not fully supported by the medical evidence as a whole and it is not consistent with the above stated residual functional capacity and the medical evidence as a whole." (Tr. at 19). Additionally, the ALJ found that "[t]he medical evidence of record supports the finding that the claimant is capable of a light exertional residual functional capacity and this is supported by his relatively normal physical examinations and objective and diagnostic testing results." (*Id.*).

Upon consideration, the Court finds that the ALJ stated good reasons supported by substantial evidence for giving the opinion of Dr. Baltazar little weight. *See Winschel*, 631 F.3d at 1179.

First, Defendant appears to be correct that the only additional limitations Dr. Baltazar included in his opinion that may be considered greater than the RFC assigned to Plaintiff deal with Plaintiff's vision, hearing, and ability to lift. (*See* Tr. at 588-95). Upon review, however, the ALJ cited other substantial evidence of record in making his RFC determination.

Specifically, as to Plaintiff's vision and hearing limitations, as explained above, the ALJ's RFC determination as to Plaintiff's vision and hearing impairments is supported by other substantial evidence of record. *See* Discussion in Part II.A.i. *supra*.

Additionally, as to Plaintiff's ability to lift, the Court notes that the ALJ determined that Plaintiff can "occasionally lift/carry 20 pounds" and "frequently lift/carry 10 pounds." (Tr. at 15). Dr. Baltazar opined, however, that Plaintiff was limited to occasionally lifting 10 pounds and frequently lifting less than 10 pounds. (Tr. at 589). Notwithstanding Dr. Baltazar's opinion, the ALJ gave considerable weight to Dr. Johnson's opinion, which noted that Plaintiff had full range of motion, 5/5 motor strength, and 5/5 grip strength. (Tr. at 574-77). Additionally, the ALJ noted Plaintiff's testimony that he could lift up to 20 pounds unaided. (Tr. at 16 (citing Tr. at 100)). Based on these citations to the record, the Court finds the ALJ's RFC determination as to Plaintiff's ability to lift is supported by substantial evidence.

Based on the ALJ's citations to the record, the ALJ's RFC determination is supported by substantial evidence. Accordingly, even though Dr. Baltazar's opinions differ as to Plaintiff's limitations, the Court nevertheless finds that the ALJ's reasons for giving Dr. Baltazar's opinion less weight – *i.e.*, that the opinion (1) "is not fully supported by the medical evidence as a

whole," (2) is not consistent with his RFC findings, and (3) is not consistent with the medical evidence as a whole – are supported by substantial evidence of record.

Furthermore, the Court notes that the ALJ also discounted Dr. Baltazar's medical opinion because "[t]he medical evidence of record supports the finding that the claimant is capable of a light exertional residual functional capacity and this is supported by his relatively normal physical examinations and objective and diagnostic testing results." (Tr. at 19). Dr. Johnson's opinion provides substantial evidence in support of this finding. Specifically, Dr. Johnson's opinion noted that Plaintiff had full range of motion, 5/5 motor strength, and 5/5 grip strength. (Tr. at 577). Thus, the Court finds that the ALJ cited substantial medical evidence of record in making a finding that Plaintiff had "relatively normal physical examinations and objective and diagnostic testing results."

In sum, the Court finds that the ALJ stated clear reasons for giving Dr. Baltazar's opinion little weight and those reasons are supported by substantial evidence. *See Winschel*, 631 F.3d at 1179. The ALJ, therefore, did not err on this ground.

### 3. Dr. Sareen's opinion

Plaintiff contends that the ALJ erred in his review of Dr. Sareen's opinion. (Doc. 22 at 16). Specifically, Plaintiff contends that the ALJ's review of Dr. Sareen's opinion is conclusory. (*Id.*). Defendant disagrees, arguing that the ALJ gave good reasons for giving Dr. Sareen's opinions little weight. (Doc. 24 at 9-10).

Upon review, the Court notes that ALJ gave three reasons for discounting Dr. Sareen's opinion. (Tr. at 19). First, the ALJ stated that Dr. Sareen did not provide a good explanation for his opinions. (Tr. at 19). Second, the ALJ stated that Dr. Sareen did not provide his treatment

notes. (Tr. at 19). Finally, the ALJ stated that Dr. Sareen's opinion is not supported by any other objective medical evidence. (Tr. at 19).

Upon consideration, the Court agrees with Defendant that the ALJ stated good reasons for giving the opinions of Dr. Sareen little weight.

First, the Court notes that the weight given to medical opinions of non-treating doctors like Dr. Sareen depends on the degree to which the opinions *provide supporting explanations*. 20 C.F.R. § 404.1527(c)(3). Here, Dr. Sareen's opinions lack any explanations for the conclusions in the opinions. (Tr. at 719-24, 729-33). Additionally, Dr. Sareen's opinions do not include any accompanying treatment records or notes. (*See* Tr. at 719-24, 729-33). Instead, Dr. Sareen's opinions consist of conclusory statements without any accompanying explanations. (*See* Tr. at 719-24, 729-33). Accordingly, because Dr. Sareen does not provide good supporting explanations for his opinions, the Court cannot find error in the ALJ's decision to afford Dr. Sareen's opinion less weight on this basis. *See* 20 C.F.R. § 404.1527(c)(3).

Furthermore, the Court notes that the ALJ gave Dr. Sareen's opinion less weight because it is not supported by "any other objective medical evidence." (Tr. at 19). On this point, the record shows that Dr. Sareen gave opinions related to Plaintiff's musculoskeletal limitations, cardiovascular limitations, hearing limitations, and vision limitations. (Tr. at 719-24, 729-33). Dr. Sareen's opinions appear to show significant limitations in these areas. (*See id.*). Nevertheless, as indicated above, there is substantial medical evidence of record supporting the ALJ's RFC determination as to Plaintiff's vision limitations, hearing limitations, and ability to lift. Moreover, Plaintiff does not argue that the ALJ erred regarding any limitations related to his cardiovascular system. Thus, the Court finds that the ALJ properly gave Dr. Sareen's opinion less weight because "other objective medical evidence" does not support the opinion.

In sum, the Court cannot find that the ALJ erred as to the weight given to Dr. Sareen's opinion and, therefore, the Court affirms on this issue.

      iv.     *Whether the ALJ's RFC Determination Is Supported by Substantial Evidence*

In sum, substantial evidence of record supports the ALJ's decision as to his review of Plaintiff's RFC. *See Edwards*, 937 F.2d at 584 n.3. The Court, therefore, affirms the ALJ's RFC determination.

**B.    Plaintiff's Credibility**

Plaintiff's next contention is that the ALJ erred in assessing his credibility. (Doc. 22 at 18). Plaintiff specifically contends that the ALJ failed to identify which of his symptoms were inconsistent with the evidence of record and how the ALJ's evaluation of those symptoms led to his conclusions. (*Id.*). Additionally, Plaintiff argues that the ALJ failed to consider the extent to which he structured his activities to minimize symptoms. (*Id.*). Finally, Plaintiff argues that the ALJ improperly used Plaintiff's application for unemployment benefits in assessing credibility. (*Id.*).

Defendant disagrees, arguing that "the ALJ properly considered Plaintiff's subjective complaints and adequately explained his reasoning for finding Plaintiff's statements not entirely credible." (Doc. 24 at 12).

As an initial matter, Plaintiff cites to SSR 16-3p in reviewing this issue. (Doc. 22 at 20). The Court notes that the ALJ's decision, (Tr. at 8-28), was rendered on November 17, 2014 before SSR 16-3p was issued. *See* SSR 16-3p, 2016 WL 1119029 (effective date modified to

March 28, 2016, 2016 WL 1237954).[3]  The Appeals Council's denial, (Tr. at 1-6), however, was

issued on March 31, 2016, after SSR 16-3p became effective on March 28, 2016.

The applicability of the SSR 16-3p could be impactful in some situations because SSR

16-3p deals with an ALJ's credibility determination of a claimant.  *See* SSR 16-3p, 2016 WL

1119029, at *10.  Specifically, SSR 16-3p supersedes SSR 96-7p and eliminates the use of the

term "credibility" from the ALJ's analysis, and instead clarifies that "subjective symptom

evaluation" is not an examination of an individual's character or truthfulness in the manner

typically used during an adversarial court litigation.  SSR 16-3p, 2016 WL 1119029, at *10.

At this point, there is some question as to whether SSR 16-3p should apply retroactively.

*See Wood v. Berryhill*, No. 4:15-CV-1248-LSC, 2017 WL 1196951, at *8 (N.D. Ala. Mar. 31,

2017).  The Eleventh Circuit has not determined, in a published opinion, whether SSR 16-3p

should apply retroactively.  *See Green v. Soc. Sec. Admin., Comm'r*, No. 16-16272, 2017 WL

3187048, at *4 (11th Cir. July 27, 2017) (declining to apply SSR 16-3p retroactively).

Nevertheless, the Supreme Court has previously stated that "[r]etroactivity is not favored in the

law," and administrative rules will not be construed to have retroactive effect unless Congress

expressly empowers the agency to promulgate retroactive rules and the language of the rule

explicitly requires retroactive application.  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208

(1988).  Based on the language from *Bowen* and without any specific retroactive language in

SSR 16-3p, the Court is not convinced that SSR 16-3p should apply retroactively.  *See id.*

---

[3] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration."  *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, *id.*, they are nevertheless afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance."  *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

Regardless of whether SSR 16-3p applies retroactively, the outcome would be the same. Specifically, while SSR 16-3p eliminates the term "credibility" from the analysis and replaces it with "subjective symptom evaluation," SSR 16-3p does not alter what the ALJ must consider in evaluating a claimant's symptoms. *See id.*; *see also Wood*, 2017 WL 1196951, at *8. In this instance, Plaintiff does not argue that the new language from SSR 16-3p is dispositive. Instead, Plaintiff argues that the ALJ misapplied the criteria for evaluating Plaintiff's subjective symptoms. As such, the Court finds that the answer to the question of whether SSR 16-3p applies retroactively is not dispositive of the issue Plaintiff has raised in this case.

Turning to the ALJ's credibility determination, the Court notes that to establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have

reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ considers in evaluating a plaintiff's subjective symptoms include:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; *see also* SSR 16-3p, 2016 WL 1119029, at *7 (factors nearly identical to SSR 96-7p); *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In looking at Plaintiff's credibility, the ALJ gave four reasons for finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent that all work is precluded." (Tr. at 17).

First, the ALJ pointed to Plaintiff's activities of daily living as being inconsistent with the statement that all work is precluded. (Tr. at 17). In evaluating Plaintiff's activities of daily living, the Court notes that participation in daily activities of short duration, such as housework or fishing, does not disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436,

1441 (11th Cir. 1997). Nevertheless, a claimant's daily activities are a factor for the ALJ to consider in determining credibility. *See Moreno*, 366 F. App'x at 28; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ's review of Plaintiff's daily activities was only part of the evidence the ALJ considered in making his credibility determination. (*See* Tr. at 15-17). Specifically, the ALJ noted that Plaintiff worked some after the alleged onset date. (Tr. at 17). Additionally, the ALJ noted that Plaintiff performs some housework such as loading and unloading the dishwasher. (*Id.*). The ALJ did not review Plaintiff's daily activities exclusively. Rather, in determining Plaintiff's credibility, the ALJ reviewed the medical records as a whole, including a review of Plaintiff's daily activities. (*See* Tr. at 17).

Furthermore, while Plaintiff argues that the ALJ should have considered Plaintiff's testimony showing that Plaintiff structured his daily activities to avoid aggravating his symptoms, the Court notes that this factor is only one of many factors the ALJ *may* consider, but is not required to consider. SSR 96-7p, 1996 WL 374186, at *8 (noting permissive "may" in evaluating this factor); *see also* SSR 16-3p, 2016 WL 1119029, at *9 (same).

Thus, the Court finds no error in the ALJ's consideration of Plaintiff's activities of daily living as a part of the record in determining Plaintiff's credibility. *See Moreno*, 366 F. App'x at 28; *see also* 20 C.F.R. §§ 404.1529(c)(3).

Second, the ALJ pointed to past statements by Plaintiff where he indicated that pain was not a significant issue. (*Id.*). On this point, an ALJ may look to an individual's past statements and evaluate their consistency in evaluating a claimant's credibility/subjective symptom evaluation. SSR 96-7p, 1996 WL 374186, at *5; SSR 16-3p, 2016 WL 1119029, at *8 (noting that the ALJ must evaluate a claimant's past statements for consistency). In this instance, the

ALJ pointed to a pain questionnaire filled out by Plaintiff. (Tr. at 17 (citing Tr. at 354)). In that questionnaire, Plaintiff indicated that pain is "not [a] significant issue." (Tr. at 354). Based on his review of that questionnaire, the ALJ determined that Plaintiff's statements concerning pain were inconsistent. (Tr. at 17). The Court finds this citation to be substantial evidence of record supporting the ALJ's conclusion that Plaintiff's statements were not entirely credible.

Third, the ALJ noted that treatment records after September 2010 do not show additional worsening of symptoms. (Tr. at 17). Plaintiff did not contest this reason given by the ALJ for discounting his credibility. Furthermore, upon review, the Court notes that the ALJ specifically pointed to medical evidence of record from Peace River Regional Medical Center in making his conclusion that records after September 2010 do not show additional worsening of symptoms. (Tr. at 17 (citing Tr. at 596-610)). These medical records show, *inter alia*, that Plaintiff was negative for vision changes and negative for any musculoskeletal pain in the time period after September 2010. (Tr. at 606). Thus, the Court finds this citation provides substantial evidence in support of the ALJ's reason in his credibility determination.

Finally, the ALJ cited Plaintiff's application for unemployment benefits as being inconsistent with Plaintiff's allegation that he is unable to work. (Tr. at 17-18). On this point, the Court notes that an application for unemployment benefits is not necessarily inconsistent with an application for social security benefits. *See O'Neal v. Astrue*, No. 3:08-CV-63-J-MCR, 2009 WL 702865, at *11 (M.D. Fla. Mar. 17, 2009). Nevertheless, employment benefits may be considered, along with other factors, in determining a claimant's credibility. *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016).[4] Here, the ALJ considered

---

[4] In fact, even the letter written by Chief Administrative Law Judge Frank A. Cristaudo and cited by Plaintiff is his memorandum notes that unemployment benefits *may be considered* with all the other evidence of record. (*See* Doc. 22 at 23 n.5).

Plaintiff's receipt of unemployment benefits, not as proof of disability, but, rather, as being inconsistent with Plaintiff's allegations of disabling limitations. (Tr. at 17-18). The ALJ was not wrong to consider this application in combination with other evidence of record.

As stated above, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 939. Here, because the ALJ articulated specific reasons, supported by the record, for finding that Plaintiff was not entirely credible, the Court cannot find that the ALJ was clearly wrong to discredit Plaintiff's testimony. *See id.* Accordingly, the ALJ's credibility determination is affirmed. *See Wilson*, 284 F.3d at 1225.

### C.    Plaintiff's Past Relevant Work

Plaintiff's next contention is that the ALJ erred in determining that he could return to past relevant work. (Doc. 22 at 24). Plaintiff specifically contends that the ALJ failed to consider that his past relevant work was accommodated. (*Id.* at 24-25). Plaintiff argues that – due to the accommodations – his past relevant work as a retail manager and stocker should not be included as past relevant work. (*Id.* (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 803 (1999)). Plaintiff further contends that the ALJ should have included additional limitations in his hypothetical question to the VE. (*Id.* at 25-26). Plaintiff argues that if these additional limitations had been properly included, then Plaintiff would be precluded from performing past relevant work. (*Id.*).

Defendant disagrees, arguing that Plaintiff failed to meet his burden of showing that he cannot perform past relevant work. (Doc. 24 at 15). First, Defendant points out that Plaintiff does not argue that his past relevant work as a merchandiser was accommodated or that it should not be considered past relevant work. (*Id.*). On that basis alone, Defendant contends that

Plaintiff has not met his burden of showing that he could not perform his past relevant work as a merchandiser. (*Id.*).

Further, Defendant contends that Plaintiff's reliance on *Cleveland* is misplaced because that case does "not address past relevant work, but held that, despite the appearance of conflict between disability claims and claims under the Americans with Disabilities Act, there is no negative legal presumption against asserting both claims." (*Id.* (citing *Cleveland*, 526 U.S. at 803)). Defendant contends that work done under special conditions does "not automatically exclude the work experience as past relevant work." (*Id.*). Thus, Defendant contends that Plaintiff's work as a retail manager still constitutes past relevant work. (*Id.*). Defendant contends that "the ALJ properly found that Plaintiff's work as a retail manager was past relevant work both with and without accommodations, and the VE's testimony provides substantial evidence that Plaintiff could perform his past relevant work as generally performed." (*Id.* at 17).[5]

Finally, Defendant contends that because the ALJ's RFC determination is supported by substantial evidence, the ALJ was not required to include additional limitations not supported by the record in his hypothetical to the VE. (*Id.* (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

Upon review, the Court agrees with Defendant that Plaintiff has not met his burden of demonstrating that he could not perform past relevant work.

As an initial matter, while Plaintiff cites *Cleveland* for the proposition that past relevant work with accommodations should not be considered as past relevant work, the Court finds

---

[5] The Court notes that Defendant does address whether Plaintiff's work as a stock clerk still constitutes past relevant work. (*See* Doc. 24 at 17).

Plaintiff's reliance on *Cleveland* is misplaced. Specifically, *Cleveland* does not address whether accommodated work may be considered as past relevant work. *See Cleveland*, 526 U.S. at 806. Instead, *Cleveland* stands for the proposition that an individual may assert claims under the Social Security Act and the Americans with Disabilities Act, despite the apparent conflicting standards inherent in bringing both claims. *See Cleveland*, 526 U.S. at 806. Plaintiff has not cited any other authority demonstrating that accommodated work cannot be considered past relevant work. Accordingly, Plaintiff has not met his burden of demonstrating that any of his past relevant work should not be considered past relevant work. *See Hines-Sharp*, 511 F. App'x 913, 915 n.2.

Furthermore, Defendant is correct that when an ALJ's RFC determination is supported by substantial evidence, the ALJ is not required to include additional limitations that are not supported by the record in hypothetical questions to the VE. *See Crawford*, 363 F.3d at 1161. Here, the Court has found that the ALJ's RFC analysis is supported by substantial evidence. Thus, the ALJ did not err in asking hypothetical questions to the VE because the ALJ is not required to include additional limitations that are not supported by the record. *See id.*

Finally, while Plaintiff makes specific arguments that he could not perform his past relevant work as a retail manager and a stock clerk, Plaintiff makes no argument that he could not perform his past relevant work as a merchandiser, accommodated or not. (*See* Doc. 22 at 24-26). As a result, notwithstanding any inability by Plaintiff to perform his past relevant work a retail manager or a stocker, Plaintiff has not met his burden of demonstrating that he could not perform his past relevant work as a merchandiser. *See Hines-Sharp*, 511 F. App'x 913, 915 n.2. Because Plaintiff has not demonstrated that the ALJ erred in determining that Plaintiff could perform his past relevant work, the Court affirms the ALJ's decision on this ground.

### D.     The ALJ's Step Five Analysis

Plaintiff's final arguments revolve around his contention that the ALJ erred at step five of the sequential evaluation.  (Doc. 22 at 26).  The Court notes, however, that in the five-step sequential evaluation process, the analysis only proceeds to step five if a claimant is unable to perform past relevant work at step four.  *See Phillips*, 357 F.3d at 1239; 20 C.F.R. § 404.1520(a).  If a claimant can perform past relevant work at step four, then a claimant is not disabled.  20 C.F.R. § 404.1520(a).  Here, the Court has found that the ALJ's decision is supported by substantial evidence through step four.  Because substantial evidence supports the ALJ's conclusion that Plaintiff can perform his past relevant work, the ALJ's finding that Plaintiff is not disabled is also supported by substantial evidence.  Accordingly, the Court finds that it need not address the ALJ's decision at step five because any potential error at step five would be harmless as it would not affect the ultimate conclusion.

## III.     Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

### IT IS HEREBY ORDERED:

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 25, 2017.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties